**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 15-cv-01785

HISPANIC AFFAIRS PROJECT, ET AL.,
      Plaintiffs,

v.

THOMAS E. PEREZ, ET AL.,
      Defendants.

---

**EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR
MOTION FOR PRELIMINARY INJUNCTION**

---

**Certificate of Compliance with D.C.COLO.LCivR 65.1**

Pursuant to D.C.COLO.LCivR 65.1, Plaintiffs will serve a copy of this motion and all related documents to the Defendants as soon as practicable after filing and will file notice of such service when it occurs. Further, for the reasons stated in the motion, this Court should act as soon as possible on this motion as Plaintiffs cannot wait for a response before obtaining relief under F.R.C.P 65(b)(1).

**Certificate of Compliance with D.C.COLO.LCivR 7.1(A)**

Plaintiffs' counsel did not confer with Defendants prior to filing this motion because no defendants have appeared.

## I.    INTRODUCTION

The U.S. Department of Labor sets wage floors for most of the roughly 2,300 foreign and U.S. sheepherders in the United States at a shockingly low $750 per month. This is the result of the DOL's illegal failure to follow its own 2011 Special Procedures, regulations it crafted to set wage floors for these herders. This failure has caused the exclusion of nearly all U.S. workers from the U.S. sheepherder labor force and has facilitated a misuse of the temporary agricultural worker program (the H-2A visa program) that has caused the replacement of U.S. sheepherders with impoverished foreign workers.

The 2011 Special Procedures exempt sheepherders from the default wage rules that apply to all other H-2A agricultural workers and allow the DOL to set distinct wage floors that govern only sheepherders. *See infra* at 8 (the current wage floor for each state). But the Special Procedures require the DOL to adhere to a number of requirements for how it determines the sheepherder wage floor. The DOL must: (1) update its determination of sheepherder wages annually, (2) rely on statistically valid data to determine wages, and (3) rely on current data. The DOL has failed to comply with these three mandates and has thereby violated the Administrative Procedure Act (APA).

Plaintiffs, both potential U.S. sheepherders and current sheepherders on H-2A visas, are irreparably harmed every day the DOL continues to enforce this illegal application of the Special Procedures. U.S. sheepherders suffer because they are unable to become sheepherders or to return to the industry due to the low wages. Foreign sheepherders suffer because they are paid illegally low wages and because, absent DOL

action, they lack a solid remedy at law to recover back pay from their employers at a yet-to-be-determined, rationally calculated wage floor.

This harm is also ongoing and widespread. Every month, the DOL certifies hundreds of new applications for foreign H-2A sheepherders, which means that the DOL continually reinforces its illegal application of the 2011 Special Procedures for more workers and thereby perpetuates the depression of wages for this labor force.

## II.     THE REQUESTED INJUNCTIVE RELIEF

Plaintiffs require immediate relief from this Court and move for a Temporary Restraining Order and Preliminary Injunction under F.R.C.P. 65 and 5 U.S.C. § 705, on behalf of themselves and a class of all H-2A sheepherders and potential U.S. sheepherders.

Plaintiffs' request is two-fold. First, they ask that this Court enjoin the DOL from certifying any additional H-2A Applications for Temporary Employment Certification ("H-2A Applications") for H-2A sheepherders at the illegal wage floor. DOL certification is a necessary precondition to an H-2A employer obtaining a visa to bring a foreign herder to the United States, but the DOL cannot be allowed to perpetuate an illegal wage floor that depresses the wages of sheepherders. Second, they ask that this Court require the DOL to issue the notice attached here as Exhibit A to all current H-2A sheepherder employers, making them aware that the DOL will soon issue a new sheepherder wage floor rule and that employers will be liable for at least any difference between the amount paid to current H-2A sheepherders and the new minimum as of the date of the issuance of the notice.

### III.    BACKGROUND

#### A.  The H-2A Program

H-2A sheepherders obtain visas to work in the United States pursuant to the H-2A visa program, which is administered in part by the DOL. The H-2A program takes its name from the statutory provision, 8 U.S.C. § 1101(a)(15)(H)(ii)(a), which describes the visa category for nonimmigrant foreign workers who come to the United States to perform agricultural work on a temporary basis. The DOL certifies that an employer seeking to use the H-2A program has given preference to U.S. workers over foreign workers for the available positions, and that, to the extent foreign workers are employed, their employment will not adversely affect the wages and working conditions of U.S. workers. *See* 8 U.S.C. § 1188(a)(1)(A), (B); *id*. § 1188(b).

The linchpin of the DOL's approach to its statutory mandate to protect U.S. workers is the creation of wage floors, below which wages offered to workers in the H-2A program cannot fall. By regulation, H-2A employers must agree to pay H-2A workers at least the Adverse Effect Wage Rate (AEWR), the prevailing wage, the federal or state minimum wage, or the agreed-upon collective bargaining rate, whichever is highest. *See* 20 C.F.R. §§ 655.120(a), 655.122(l). The AEWR, which is the "annual weighted average hourly wage for field and livestock workers," 20 C.F.R. § 655.103(b), is often the highest wage available and generally accords H-2A workers a minimum wage of between approximately $10-13 per hour, depending on the state in which the worker is employed. *See* Adverse Effect Wage Rates – Year 2015, Department of Labor (Jan. 8, 2015), http://www.foreignlaborcert.doleta.gov/adverse.cfm.

According to the DOL, this mandate that H-2A employees be paid the AEWR (or any higher wage) applies "except where a special procedure is approved for an occupation or specific

class of agricultural employment." 20 C.F.R. § 655.120(a). In turn, as long as it does not violate

any statutory protections established by Congress for H-2A workers, the DOL has a "limited

degree of flexibility . . . to establish, continue, revise, or revoke special procedures for processing

certain H-2A applications" and for certain occupations (including sheepherding), "has the

authority to establish monthly, weekly, or semi-monthly adverse effect wage rates (AEWR) . . .

for a statewide or other geographical area." *Id*. § 655.102.

**B.  The Sheepherder Exemption: 2011 Special Procedures**

The DOL has enacted special procedures governing the wages of sheepherders, and these

rules exempt them from many of the labor protections accorded other H-2A workers, including

the hourly minimum wage rule referenced above. Instead of the hourly AEWR, sheepherders are

paid a monthly one. Three versions of sheepherder Special Procedures ("SP") promulgated in

2001, 2011, and 2015, are implicated here,[1] and the DOL's failure to follow the 2011 SP is the

central issue in this case. The 2011 SP have been in effect since August 2011 and the wage

component of that rule is anticipated to be superseded by the 2015 SP in January 2016. *See* 2015

SP, 80 Fed. Reg. at 20,340.

**1.      The *Mendoza* Litigation**

Federal courts in the D.C. Circuit have already determined that the 2011 SP were

procedurally defective in violation of the APA because the DOL issued them without the

---

[1] These regulations will be referred to by the year they were first promulgated, with citations by exhibit page number or by the page number in the Federal Register. For the 2001 SP, see *FM 24–01*, *available at* http://www.foreignlaborcert.doleta.gov/fm/fm_24-01a.pdf. For the 2011 SP, see 76 Fed. Reg. 47,256 (issued Aug. 4, 2011), *available at* http://www.gpo.gov/fdsys/pkg/FR-2011-08-04/pdf/2011-19755.pdf. For the proposed 2015 SP, see 80 Fed. Reg. 20,300 (proposed Apr. 15, 2015), *available at* http://www.gpo.gov/fdsys/pkg/FR-2015-04-15/pdf/2015-08505.pdf.

4

opportunity for public notice and comment, *Mendoza v. Perez*, 754 F. 3d 1002 (D.C. Cir. 2014), but have allowed the 2011 SP to remain in effect in the short term notwithstanding the procedural violation, *see Mendoza v. Perez*, No. 11-1790, 2014 U.S. Dist. Lexis 154276, at *19-20 (D.D.C. Oct. 31, 2014). However, *Mendoza* was merely a procedural challenge. The substance of the 2011 SP were not at issue and the 2011 SP were left in place pending implementation of special procedures promulgated with notice and comment, i.e., the 2015 SP.

        **2.      The DOL's Substantive APA Violations**

        In contrast, this case is about the DOL's *substantive* violations of the APA, which derive from the DOL's failure to follow three requirements of the 2011 SP when calculating the sheepherder wage floor. Unlike the *Mendoza* procedural violations, these violations immediately and continually harm U.S. and H-2A sheepherders.[2] The three violated mandates are as follows:

        *a.   DOL Must Rely on Annual Wage Determinations for Sheepherders*

        First, the 2011 SP dictate that the DOL must determine H-2A sheepherder wage floors every year. The 2011 SP preferred method for calculating wage floors is to use annual prevailing wage surveys conducted by State Workforce Agencies (SWAs), which must conduct interviews of workers about the wages paid in the industry to only domestic (i.e., not foreign) sheepherders. SWAs are then required to annually transmit their findings to the DOL. Based on these data, the

_____

[2] The industry concurs in this distinction. *See* American Wool Growers Association, DOL's Proposed H-2A Rule Will Devastate The Open-Range Herding Industry 2 (Apr. 21, 2015) (noting that because the only violation found in *Mendoza* "was a procedural one," the remedy did not "require [the] DOL to change any of the substance of the decades-old rules already in place"), *available at* http://tinyurl.com/ozgvudd.

DOL "will publish the new agricultural prevailing wage rates in a Federal Register notice with an immediate effective date." 2011 SP, 76 Fed. Reg. at 47,258.

Because the SWAs must provide data annually on sheepherder wages, it follows that the DOL must provide an annual publication of wage determinations. The DOL itself concurs that the 2011 SP require the annual determination of sheepherder wage floors and has adhered to that practice since at least 1988.[3]

b. <u>The DOL Must Rely on Statistically Valid SWA Surveys</u>

Second, as part of the DOL's annual review of the SWA surveys, the DOL must determine if the survey is statistically valid, a figure which the DOL has suggested must include a sample of at least thirty workers. *See* 2011 SP, 76 Fed. Reg. at 47,258 (noting that a wage finding might not be valid because of "an inadequate sample size"); 2015 SP, 72 Fed. Reg. at 20,307 (noting the requirement in the 2011 SP that the DOL use survey data from a "statistically valid" SWA survey); *id*. at 20,314 (noting that surveys with sample sizes of between eighteen and thirty workers are "are insufficient to support statistically reliable wage results").

---

[3] The DOL has consistently interpreted the 2011 SP to require annual publication of sheepherder wages. *See* 78 Fed. Reg. 1260, 1260 (Jan. 8, 2013) (noting that the 2011 SP "clarified the process for establishing the annual prevailing wage . . . rates for [sheepherding]"); *id*. at 1264 (noting that the sheepherder wage determination would remain in effect "until the issuance of the next annual publication of new prevailing wage rates"). The DOL maintained a similar practice in determining wages prior to adopting the 2011 SP. *See*, *e.g.*, Ex. C, *Revised H-2A Sheepherder and Goatherder Survey*, at 2 (Jul. 26, 2011) ("These 2011-2012 prevailing wages . . . shall continue in place until the issuance of the 2011-2012 prevailing wage finding memorandum."); 2001 SP at 4 (noting a deadline of July 1 of each calendar year for DOL to establish a new wage floor); *see also* 53 Fed. Reg. 22,076, 22,095 (June 13, 1988) (DOL handbook noting sheepherder wages "are governed by prevailing wage surveys . . . which are verified annually by the National Office and transmitted to the Regional Offices").

    *c.*  *If There is a Problem with the SWA Surveys, The DOL Can Rely on Alternative Methodologies But Can No Longer Rely on Old Data To Establish Current Sheepherder Wages*

Third, if a SWA does not provide usable data in its survey, the 2011 SP allow the DOL to rely on several alternative methodologies to determine annual adjustments to sheepherder wages. For example, the DOL can issue a prevailing wage floor for that state "based on the wage rate findings submitted by an adjoining or proximate SWA for the same or similar agricultural activities to ensure that the wages of similarly employed workers are not adversely affected." Alternatively, the DOL can consider "aggregating survey data for sheepherding . . . activities across States to create regional prevailing wage rates." Finally, the DOL can create regional prevailing wages by relying on "the U.S. Department of Agriculture's . . . production or farm resource regions or other groupings of States used to conduct its Farm Labor Survey." 2011 SP, 76 Fed. Reg. at 47,258.

Under the 2011 SP, however, one additional method is no longer available for the DOL to determine herder wages. In particular, while the DOL used to rely on prior, years-old surveys of herders to establish their current wages, in the 2011 SP, the DOL abandoned this methodology.[4] The DOL precluded the use of older SWA surveys to establish current wage floors because "program experience demonstrated that the use of a prior year's wage for the state or a prior year's wage from an adjoining state produced persistent wage stagnation in these

---

[4] *Compare* 2001 SP at 6 (allowing that in the absence of an acceptable SWA survey for a specific state that the DOL could "use[e] past survey data for sheepherders . . . in that state"), *with* 2011 SP, 76 Fed. Reg. at 47,258 (allowing that in such circumstances the DOL can only rely on another state's surveys, data aggregation, or other sources of data).

occupations." Ex. D, Declaration of Brian David Pasternak, Department of Labor, at ¶ 10, *Little v. Solis*, No. 13-46-HDM-WGC (D. Nev. Feb. 22, 2013) (ECF No. 5-1).[5]

## C. **The DOL's Failure to Follow the 2011 SP**

The DOL is not complying with any of the three requirements outlined immediately above. To establish these violations, Plaintiffs provide below a table of the states in which H-2A sheepherders are currently employed, the minimum monthly wage they earn, the basis for and date of that wage determination, and (as applicable) the date of the SWA prevailing wage survey (PWS) findings and the number of workers the SWA surveyed. This table derives from prevailing wage determinations made by the DOL in July 2011 and January 2013 (the "July 2011 Rule" and "January 2013 Rule"), which in turn rely on prevailing wage findings from SWAs in California, Colorado, Nevada, Oregon, and Wyoming. *See* Ex. C-I.[6]

| State(s) | Monthly Wage Floor | Basis for Wage | Date SWA Finding Made | Date of DOL Determination | # of Workers Surveyed |
|---|---|---|---|---|---|
| Nine States | $750 | Colorado PWS | May 16, 2012 | January 8, 2013 | Nine |
| California | $1,422.55 | California PWS | January 18, 2012 | January 8, 2013 | Ten |
| Arizona Washington | $750 | Wyoming PWS | April 15, 2011 | July 26, 2011 | Six |
| Nevada | $800 | Nevada PWS | June 9, 2009 | July 26, 2011 | Seven |
| Oregon | $1,277 | Settlement Agreement | January 24, 2011 | July 26, 2011 | N/A |

---

[5] *See also id.* (additionally justifying the decision to preclude reliance on prior state surveys because "prevailing wages were being based on survey data that was several years old or more" and the use of "current prevailing wage survey data for these occupations . . . was desired").

[6] For the July 2011 Rule, see Ex. C, cited *supra* note 3. For the January 2013 Rule, see 78 Fed. Reg. 1260 (Jan. 8, 2013), *available at* http://www.gpo.gov/fdsys/pkg/FR-2013-01-08/pdf/2013-00115.pdf. For the SWA Surveys from California, Colorado, Nevada, Oregon, and Wyoming, see, respectively, Ex. E, F, G, H, and I.

As the table establishes, the DOL's current bases for determining herder wages give rise to three violations of the 2011 SP. First, the DOL is ignoring the 2011 SP requirement that it make wage determinations every year: January 2013 marked the last time the DOL published a determination of the herder wage floor in the Federal Register and, as discussed below, the DOL determinations for some states date from July 2011. Second and third, the DOL has violated the 2011 SP by basing wage floors on old and statistically invalid survey data.[7] These violations manifest in slightly different ways in different states, as detailed below:

- **California**: To determine California herder wages, the DOL currently relies on a California SWA survey of only ten sheepherders, which was conducted in January 2012. *See* Ex. E (California wage finding); January 2013 Rule, 78 Fed. Reg. at 1262 & n.3.[8]

- **Nine States**: The DOL currently relies on a Colorado SWA survey of only nine herders, which was conducted in May 2012, to establish the wages of herders in the following nine states: Colorado, Idaho, Montana, New Mexico, North Dakota, Oklahoma, Texas, Utah, and Wyoming. *See* Ex. F (Colorado wage finding); January 2013 Rule, 78 Fed. Reg. at 1262 & n.3 (linking the Colorado finding to these other states).

- **Arizona, Nevada, Oregon, and Washington**: Sheepherder wages in these states have changed two times over the last three years because in the January 2013 Rule, the DOL

---

[7] Even the industry admits that the use of surveys under current conditions makes no sense: "[t]he use of prevailing wage surveys is no longer appropriate in defining H2-A sheepherder wages due to declining number of sheepherders and the inability for prevailing wage surveys to meet sample size thresholds. The resulting concern is that sheepherder wages are stagnant, for there is not a valid updating mechanism." American Sheep Industry Association *et al.*, H2-A Sheepherders Compensation Methodology, at 4 (Oct. 9, 2014), *available at* http://tinyurl.com/ngzh2od.

[8] The DOL now lists online a higher monthly minimum wage (of $1600.35) for California sheepherders, which tracks the (recently increased) state-mandated California sheepherder minimum wage (California is one of two states where state-level efforts have increased the herder wages above the federal level). *See* Department of Labor, Online Wage Library (last visited Aug. 10, 2015), http://www.foreignlaborcert.doleta.gov/aowl.cfm (click on "crop and livestock survey reports" for California). The DOL has not explained how a state minimum wage law can serve as the basis for the DOL wage determination. Further, in violation of the 2011 SP, the DOL has never published this higher wage in the Federal Register.

initially tried to link wages in these states to the higher California wage floor. The industry sued the DOL and, as a result and prior to the end of litigation, the DOL voluntarily issued a new wage rule for these states that retroactively rescinded the wage increase and linked wages in these states to the (previously issued) July 2011 DOL wage determination.[9]

## IV.    STANDARD FOR CLASSWIDE INJUNCTIVE RELIEF

To be entitled to preliminary injunctive relief, Plaintiffs must show: (A) a likelihood of success on the merits of their claim, (B) a likely threat of irreparable harm to the movant, (C) the injunction is both in the public interest and the harm alleged outweighs any harm to the non-moving party. *See, e.g.*, *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010). At the same time, "where the . . . latter harm factors weigh in favor of the movant, the probability of success factor is relaxed." *Id.* at 1117 n.1.

Further, a party seeking a temporary restraining order must demonstrate "that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition," Fed. R. Civ. P. 65(b)(1)(A), though this element does not apply if Defendants are heard on the motion, *see, e.g.*, *Snyder v. Manguso*, No. 15-cv-00591, 2015 U.S. Dist. Lexis 84038, at *2-3 (D. Colo. June 29, 2015).

---

[9] For the industry-initiated litigation, see *Little v. Solis*, No. 13-46-HDM-WGC (D. Nev. filed Jan. 29, 2013). For the rescission prompted by this litigation, see 78 Fed. Reg. 19,019, 19,020 (Mar. 28, 2013) (noting, without further explanation, that the DOL opted to retroactively rescind part of the January 2013 rule because of "issues regarding the wage finding process" in the aforementioned states and stating that that the wages would be based upon "the previous prevailing wage findings issued" by the DOL for those states), *available at* http://www.gpo.gov/fdsys/pkg/FR-2013-03-28/pdf/2013-07201.pdf. Finally, the DOL has based sheepherder wages in Oregon off of a 1994 settlement agreement between a private plaintiff and the industry, which allowed for deductions for food costs from herders' salaries. *See* Ex. H. This is not a wage-determination methodology available to DOL under the 2011 SP, which also prohibit employers from deducting meal expenses from herder salaries. *See* 2011 SP, 76 Fed. Reg. at 47,259 (noting herders' meals must be provided "free of charge").

Finally, in the context of a class action brought under F.R.C.P. 23(b)(2), if a plaintiff can establish the aforementioned factors for preliminary injunctive relief, it is well established that this Court has "the power to order injunctive relief covering potential class members prior to class certification" and may "order a broad preliminary injunction, without a formal class ruling, under its general equity powers." *Lee v. Orr*, No. 13-cv-8719, 2013 U.S. Dist. Lexis 173801, at *6-7 (N.D. Ill. Dec. 10, 2013) (citing *Newberg on Class Actions* § 9:45 (4th ed. 2002)).[10]

## V.    ARGUMENT

As detailed below, Plaintiffs establish all the elements necessary to obtain relief that: (1) enjoins the DOL from certifying H-2A Applications based on the illegally low wage floor and (2) requires the DOL to notify sheepherder employers that they will be liable for the difference between the illegally calculated floor and a legally calculated one to be determined.

## A.  **Plaintiffs Are Likely To Succeed In Their APA Challenge**

### 1.    Standard

First, Plaintiffs are likely to succeed on the merits of their APA claim, which requires that this Court "shall . . . hold unlawful and set aside" DOL actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[11]

_____

[10] *See also Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012) ("Simply put, there is nothing improper about a preliminary injunction preceding a ruling on class certification."); *Freeman v. USDA*, 350 F. Supp. 457 (D.D.C. 1972) (granting pre-certification preliminary injunctive relief to a class of farmworkers who had established the DOL had likely violated the APA in the manner it determined their wages); *Lee*, 2013 U.S. Dist. Lexis 173801, at *6-7 (collecting additional authorities).
[11] The DOL's implementation of the 2011 SP violates the APA on four grounds. *See* Compl., ECF # 1, at 11-14. Given page-limit constraints, Plaintiffs focus on their arbitrary and capricious APA challenge and omit discussion of their separate challenges under three additional APA

As relevant here, because "[a]gencies are under an obligation to follow their own regulations," this Court "must require the [DOL] to adhere to its own pronouncements or explain its departure from them," *City of Colo. Springs v. Solis*, 589 F.3d 1121, 1128 (10th Cir. 2009), and must hold that "[t]he failure of [the DOL] to comply with its own regulations constitutes arbitrary and capricious conduct," *Cotton Petroleum Corp. v. Dep't of Interior*, 870 F.2d 1515, 1527 (10th Cir. 1989).

Further, to prevail on an arbitrary and capricious challenge alleging an unsupported change in policy, "an agency changing its course must supply a reasoned analysis" for the change and similarly must establish that it has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Atchison v. Wichita Bd. of Trade*, 412 U.S. 800, 808 (1973) (an agency "must . . . clearly set forth" changes in policy "so that the reviewing court may understand the basis of the agency's action and . . . judge the consistency of that action with the agency's mandate").

Finally, the DOL's failure to follow its own regulations and engage in reasoned decision-making is not unique to this case: as relevant here, other courts have applied the above standard to similar APA challenges to the way the DOL has failed to correctly determine the wages of low-wage workers. For example, in *Comité de Apoyo a los Trabajadores Agricolas v. Perez*, 774 F.3d 173, 188 (3d Cir. 2014) [hereinafter *CATA III*], the Third Circuit recently held that the

---

provisions. Plaintiffs are willing to brief these questions separately if the Court deems such discussion necessary and assert that these additional APA violations provide alternative (and largely overlapping) grounds for preliminary injunctive relief.

DOL's reliance on factors explicitly rejected in the regulatory framework that the DOL had adopted to determine H-2B wages constituted arbitrary and capricious action. Similarly, a court in *NAACP v. Donovan*, 566 F. Supp. 1202 (D.D.C. 1983), held that the DOL's failure to promulgate the AEWR on a yearly basis violated the APA and the DOL's statutory mandate to protect American workers and entitled the farmworker plaintiffs to injunctive relief. Finally, that same court held in *Freeman v. USDA*, 350 F. Supp. 457 (D.D.C. 1972), that because the Department of Agriculture failed to follow a well-established timeline and procedure for determining sugar worker wages, the agency violated the APA and, accordingly, the workers challenging the regulatory violation were entitled to preliminary injunctive relief.

### 2.    Application

The DOL's current wage floor rule for H-2A sheepherders violates three regulatory mandates in the 2011 SP and is therefore arbitrary and capricious. If this Court finds that the DOL has *likely* committed one of these three violations, that is sufficient for purposes of meeting the first prong of the test for granting a preliminary injunction. *Cf. Winter v. NRDC*, 555 U.S. 7, 20 (2008) (requiring a Plaintiff to establish only that "he is likely to succeed on the merits").

*First*, the DOL's current implementation of the 2011 SP violates the requirement from those regulations—and longstanding DOL practice—that sheepherder wages be based on annual the DOL wage determinations. *See* Part III.B.2.a., *supra*. The DOL has instead chosen to rely on antiquated determinations from either 2011 or 2013, with no explanation for the change in course. *See* Part III.C., *supra*; *cf. Freeman*, 350 F. Supp. at 459 (holding that USDA violated the APA by departing from a decades-old practice of determining wages before October of a calendar year); *NAACP*, 566 F. Supp. at 1206 (holding that the DOL's failure to annually

calculate the AEWR was contrary to DOL regulations and violated the APA); *see also Atchison*, 412 U.S. at 808 (an agency must clearly set forth changes in policy).

*Second*, the DOL has failed to conform to the 2011 SP requirement that SWA surveys be statistically valid if relied upon for DOL wage determinations. *See* Part III.B.2.b, *supra*. By the DOL's own metric of statistical validity—*i.e.*, a survey of at least 30 workers, *see* 2015 SP, 72 Fed. Reg. at 20,307—all of the current DOL wage determinations are invalid: the Colorado survey that serves as the basis for herder wages in nine states is based on nine herders, the California survey relies on ten, the Wyoming survey used for Arizona and Washington is based on six, and the Nevada wage determination is based on seven. *See* Part III.C., *supra*. Relatedly, the DOL has not provided—and cannot provide—any rational explanation for why it continues to accept the surveys of so few sheepherders to establish the minimum wages of the thousands sheepherding across the United States. *But cf. State Farm*, 463 U.S. at 43 (requiring a "rational connection between the facts found and the choice made" by an agency).

*Third*, the DOL is flouting the 2011 SP proscription against determining sheepherder wages based on data that are several years old. *See* Part III.B.2.c., *supra*. The *only* basis for the sheepherder wage floors in place today derives from wage survey data from at least three years ago and in some cases six years ago. DOL reliance on such data violates not only the letter of the 2011 SP but also the DOL-proffered rationale behind *not* relying on such data: namely, because it causes "persistent wage stagnation." Ex. D at ¶ 10; *cf. NAACP*, 566 F. Supp. at 1207 (holding the DOL "must comply with its own regulations" to prevent downward pressure on wages); *Freeman*, 350 F. Supp. at 459 (enjoining the USDA from relying on an impermissible factor for determining sugar worker wages); *see also CATA III*, 774 F.3d at 188 (enjoining the use of an

14

impermissible factor to determine the wages of H-2B workers). And the DOL has not offered—

and cannot offer—an explanation for how relying on such antiquated data conforms to the

regulatory mandate in the 2011 SP to rely on current data to determine current wages. *Cf. State*

*Farm*, 463 U.S. at 43 (requiring such an explanation).

**B.   Plaintiffs Are Likely To Suffer Irreparable Harm in the Absence of Preliminary Relief**

Plaintiffs are also likely to suffer irreparable harm absent immediate action from this

Court and the DOL. This harm derives in part from the fact that: (1) almost all employers of H-

2A sheepherders pay exactly the DOL-determined wage floor,[12] and (2) absent action by the

DOL, these employers are likely to continue paying this illegal rate.

This reality affects plaintiffs in slightly different ways. First, potential herder plaintiffs

who would (re)join the sheepherder labor market but for the irrationally calculated wage floor

must delay the date they can return to a preferred job that offers a rationally calculated wage.

Further, these U.S. workers' rights under 8 U.S.C. § 1188 are affected because the influx of

foreign workers at a lower wage rate is likely to adversely affect their employment options.[13]

Second, absent DOL action, Plaintiffs who are current H-2A herders will continue to

receive illegally low wages and likely will be unable to obtain back pay according to a yet-to-be-

determined, rationally calculated wage floor. This is true because their employers will likely

argue that their reliance on the DOL's continued enforcement of the 2011 SP precludes such

---

[12] *See* Ex. B, Dec'l of Dermot Lynch, at ¶¶ 9-15 (noting that a review of the DOL H-2A for fiscal year 2014 reveals only two of the almost nine hundred H-2A Sheepherder Applications certified by the DOL offered a rate of pay higher than the wage floor).
[13] *Cf. Mendoza*, 754 F.3d at 1011 (recognizing for purposes of establishing standing that ex-sheepherders who would return to herding but for the low wages suffered this).

relief. Further, this form of harm will be particularly acute for the sheepherder class members whose H-2A applications will soon be certified by the DOL. Unless the Department is enjoined from certifying applications at the illegal wage floor, these herders' applications—which can establish sheepherder wages for the course of an approximately year-long-contract—will likely be certified at the illegal wage floor. After certification at the illegal floor and in light of the aforementioned reliance argument that ranchers can raise, these herders will have more limited means to enforce their right to back pay at a rationally calculated higher rate.[14]

**C.  The Balance of Equities and the Public Interest Favor the Issuance of a Preliminary Injunction**

Next, in deciding whether to grant a preliminary injunction, a court must consider the effect on the public interest and on each party of the granting or withholding of the requested relief. *Winter*, 555 U.S. at 20. Here, the public interest and balance of harms favor enjoining the continued certification of H-2A Applications at the illegal wage floors and requiring notice to employers about the probable illegality of the current wage floors.

First, the public interest tips in favor of enjoining the certification of more H-2A Applications at the illegal wage floor because the public interest favors the position that the government obey the law. As an initial matter, "[t]he public interest is served when administrative agencies comply with their obligations under the APA," *N. Mariana Islands v.*

_____

[14] Absent injunctive relief, it is well established that this reliance argument can preclude an award of back pay to workers. *Compare, e.g.*, *Morrison v. DOL*, 713 F. Supp. 664, 671 (S.D.N.Y. 1989) (partially crediting the position that because a court did not grant preliminary injunctive relief, employers could continue to rely on what was later determined to be an illegal wage regulation and not have to back pay wages), *with Frederick County Fruit Growers Ass'n v. Martin*, 968 F.2d 1265, 1274 (D.C. Cir. 1992) (reaching the opposite conclusion because a DOL wage determination was preliminarily enjoined).

*United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009), and an injunction that prevents the DOL from continuing to act arbitrarily in determining herder wages vindicates this goal.

Moreover, the injunction would further the two other statutory goals Congress set forth in creating a temporary worker program in the first place: namely, that (1) "[domestic] workers are given a preference over foreign workers for jobs that become available within this country" and (2) "to the extent that foreign workers are brought in, the working conditions of domestic employees are not to be adversely affected, nor are United States workers to be discriminated against in favor of foreign workers." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 596 (1982); *cf. Berman v. Parker*, 348 U.S. 26, 32 (1954) ("[W]hen the legislature has spoken, the public interest has been declared in terms well-nigh conclusive.").

Here, absent injunctive relief, the injury resulting from continued use of an unlawful wage floor goes far beyond the APA violation or the wages paid to the individual Plaintiffs (and the class they represent); rather, it implicates the entire public policy underlying the H-2A program. As already noted, the $750-per-month wage floor is currently depressing wages in the sheepherding industry, which causes a loss in potential wages for U.S. sheepherders, favors foreign over domestic workers, and effectively excludes U.S. workers from this industry.

For similar reasons, as to the balance of harms, this factor also favors Plaintiffs because the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). To the contrary, halting reliance on the illegal wage floor is "particularly appropriate" in this case because not adopting this course "would leave in place a rule that is causing the very adverse effect that the DOL is charged with preventing, and [this Court] would be legally sanctioning an agency's disregard of its statutory or

17

regulatory mandate." *CATA III*, 774 F.3d at 188 (internal quotation marks and citation omitted; alterations incorporated) (authorizing this same type of immediate relief for H-2B workers). And beyond ending a legal violation perpetrated by the government, this relief will ensure that sheepherders are paid a correct wage in accord with the statutory mandates of the H-2A program that the importation of foreign labor not depress domestic wages. *Cf. NAACP*, 566 F. Supp. at 1207, 1210 (authorizing injunctive relief based in part on this rationale).

Finally, immediately halting reliance on the 2011 SP wage floor will not grind the DOL's certification of H-2A Applications to a halt but will instead encourage the DOL to use one of a variety of alternative (and more rational) methodologies to calculate a wage floor. *Cf. id.* (noting the existence of viable alternatives in concluding that the immediate vacatur of an H-2B wage rule was appropriate). At least three potential options are available:

- **20 C.F.R. § 655.120(a)**: Under this regulation, while most H-2A employers must generally pay at least the hourly AEWR, the DOL has created an exemption to this default rule in the form of the 2011 SP. *See* Part II.A., *supra*. The sheepherder exception cannot apply because its application is currently illegal, and so the default rule must take effect.

- **FLS Survey**: The 2011 SP allow the DOL to determine wages by relying on "the U.S. Department of Agriculture's (USDA) production or farm resource regions or other groupings of States used to conduct its Farm Labor Survey." 2011 SP, 76 Fed. Reg. at 47,258; *see also* Part II.B.3, *supra*.

- **2015 SP**: By court order, the DOL must promulgate a final rule for the 2015 SP by November 1, 2015, with an effective date of no later than December 1, 2015. *See Mendoza*, 2014 U.S. Dist. Lexis 154276, at *19-20. But the DOL is delaying the implementation of the new wage-determination component of the rule until January 1,

2016. *See* 2015 SP, 80 Fed. Reg. at 20,340. There is no need for this delay: the DOL can accelerate the date of the issuance of the new rule.[15]

For largely the same reasons, the public interest and the balancing of equities also favor the notice injunctive remedy. First, requiring notice to employers and providing a possible mechanism for current H-2A herders to obtain back pay ameliorates the depressive effects caused by the illegally calculated wage floor. Further, notice places a *de minimus* burden on the DOL, which regularly sends notices to H-2A employers when it issues a labor certification and can be required to issue an additional notice to prevent the loss of millions in back pay for workers whose employers would otherwise rely on the illegally calculated wage rules. *See also* 5 U.S.C. § 705 (noting that on review of agency action "to the extent necessary to prevent irreparable injury, the reviewing court, . . . may issue all necessary and appropriate process . . . to preserve status or rights pending conclusion of the review proceedings); *NAACP*, 566 F. Supp. at 1210 (requiring publication of prompt notice of a change in the AEWR).

**D.  Plaintiffs Will Suffer Immediate Injury Requiring a Temporary Restraining Order**

Plaintiffs will also be harmed immediately if this Court waits to issue relief until after the DOL can be heard in opposition. The immediacy of the harm here cannot be understated. First, every day that goes by is another one in which potential U.S. sheepherders are locked out of a labor market because of depressed wages. *Cf.* Ex. J, Dec'l of Ricardo Perez, at ¶ 13 (noting that

---

[15] Plaintiffs suggest these remedies only to demonstrate what DOL can do to continue certifying sheepherder H-2A certifications. Further, DOL cannot rely on any SWA wage findings to determine herder wages going forward, as no recent survey relies on a statistically valid sample. *See* 2015 SP, 72 Fed. Reg. 20,314 (noting that nationwide only eighteen domestic herders were surveyed in 2014). Relatedly, the DOL has ample authorities to rely upon to translate any hourly wage calculation into a monthly one to be used for herders whose hourly work can at times be hard to measure. *Cf. id.* at 20,309 (referencing such authorities).

the low wages affect his members' ability to immediately enter this labor market); Ex. K, Dec'l of Rodolfo Llacua, at ¶¶ 8-10 (noting how his preferred profession is sheepherding and that he would return to this profession but for the low wages).

Meanwhile, without an immediate change in the way DOL determines wages, current sheepherders will be unable to be paid (at least) the wages due to them pursuant to a legally calculated wage floor (or recover the same as back pay). *Cf.* Ex. L, Dec'l of John Doe, at ¶¶ 12, 15 (noting the hardship he and his family suffer from being paid low wages); Ex. J, at ¶¶ 6-10 (noting that low wages is one of the biggest concerns raised by current sheepherders).

This problem also immediately affects the nationwide class. The DOL will likely certify job orders for around one thousand sheepherders between August and December 2015. *See* Ex. B, at ¶¶ 16-17. Absent immediate action from this Court and the DOL, these orders will be certified at the illegal wage floor on a rolling basis over this period. In fact, there are H-2A Sheepherder Applications currently pending certification at the illegal $750-per-month wage floor that will be certified by DOL at any moment, absent action from this Court. *Id*. at ¶¶ 18-19; Ex. M (copies of the pending H-2A Sheepherder Applications).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction and temporary restraining order should be granted and an order should issue: (1) enjoining the DOL from certifying any more H-2A applications based on the illegal wage floor and (2) requiring DOL to distribute the notice attached here as Exhibit A to all current H-2A sheepherder employers.

Dated: August 18, 2015                 Respectfully submitted,


                                       s/Alexander Hood_____

Alexander Hood
Attorney and Director of Litigation
Towards Justice
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org

s/ Nina E. DiSalvo_____
Nina E. DiSalvo
Attorney and Executive Director
Towards Justice
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: nina@towardsjustice.org

s/Dermot Lynch_____
Dermot Lynch
Attorney and Skadden Fellow
Towards Justice
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: dermot@towardsjustice.org

Attorneys for the Plaintiffs