**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Civil Case No. 15-cv-01562-BAH

HISPANIC AFFAIRS PROJECT, ET AL.,
      Plaintiffs,

v.

ALEXANDER ACOSTA, ET AL.,
      Defendants.

---

**JOINT REPORT IN RESPONSE TO DECEMBER 20, 2018 MINUTE ORDER**

---

This Court's December 20, 2018 minute order directed that the Parties file an additional joint report concerning questions this Court posed about the Parties' December 17, 2018 Joint Report [ECF # 122]. Specifically, the Court ordered the parties to address the following questions:

(1) Given that the factual stipulation in the [122] JR establishes that the defendants "regularly approved" petitions to extend H-2A visas for herders "in up-to-364-day increments, up to a total period of three years per individual beneficiary" and subsequently "after this three year period" likewise "regularly approved" new petitions from the same beneficiaries, "provided that the individual herder who has reached the maximum uninterrupted three-year period of H-2A stay has remained outside the United States for at least three months," *id.* at 2–3—

    a. what facts must the plaintiff still uncover to show that the defendants employ a "pattern and practice of automatically extending H-2A visas beyond the regulatory definition of temporary employment," *Hispanic Affairs Project v. Acosta ("HAP")*, 901 F. 3d 378, 388 (D.C. Cir. 2018), and "to ascertain the contours of the precise policy at issue," *id.* (quoting *Venetian Casino Resort, LLC v. Equal Emp't Opportunity Comm'n*, 530 F. 3d 925, 928 (D.C. Cir. 2008)), which pattern, practice, or policy "would contravene the plain text of [the defendants'] own regulations," *id.* at 387;

    b. whether a finding of a "pattern and practice of automatically extending H-2A visas beyond the regulatory definition of temporary employment," *HAP*, 901 F. 3d at 388, is precluded unless "*all* herder visas are always approved for 364-day periods" or

"employers [of herders] *always* obtain an 'extension' of the first or second 364-day visa," [122] JR at 4;

    c.   whether a finding of a "pattern and practice of automatically extending H-2A visas beyond the regulatory definition of temporary employment," *HAP*, 901 F. 3d at 388, would be precluded if the "regular approval" of such petitions "in up-to-364-day increments," for continuing three year periods interrupted by at least three months abroad, involves "individualized discretion," [122] JR at 6;

(2)  Given the factual stipulation in the [122] JR and extensive administrative record already filed in this case—

    a.   whether the scope of discovery sought by the plaintiff, including 25 interrogatories and 10 depositions (the maximum permitted absent court authorization, under Federal Rules of Civil Procedure 33(a) and 30(a)(2)(A)(i), respectively), as well as 25 document requests and 10 requests for admission, is necessary or should be more limited;

    b.   how discovery, if permitted, will proceed in this case, including: (i) the plaintiffs' list of the specific issues the plaintiffs seeks to inquire about in discovery beyond the factual stipulation; (ii) whether the administrative record supplies the identities of the proper deponents to provide factual information related to those specific issues; (iii) the persons whom the plaintiffs intend to depose, identified by name, agency and position, if known; and (iv) a detailed schedule to complete discovery within the proposed period up to June 28, 2019.

The Parties' responses to each question posed in the December 20, 2018 minute order are below.

## A.    Defendants' Position

Question (1):

    a.  Defendants submit that plaintiffs do not need to uncover any additional facts in this case, as the parties have already stipulated to the current facts with regards to adjudications of H-2A sheep and goat herder temporary labor certifications and petitions.  DHS recognizes, however, that there is a pattern and practice of approving H-2A nonimmigrant herder petitions for 364-day periods of need, if all other eligibility requirements are satisfied, but submit there is no policy or other directive to this effect.

DHS's approval of such petitions are not "automatic" because, as noted, each H-2A

6735976.2

nonimmigrant petition is individually adjudicated, and petitioners must still establish that all other eligibility requirements for H-2A classification are satisfied.

b.  No.  We note, however, that there are circumstances in which an employer requests less than 364 days on an H-2A herder nonimmigrant visa petition and there are circumstances in which an employer does not seek an extension of the herder's period of stay in H-2A nonimmigrant status for a second or third 364-day period. There are also circumstances in which an employer seeks an extension of the herder's period of stay in H-2A nonimmigrant status for a period of stay that is less than 364 days.

c.  No.  We note, however, that DHS's adjudication of H-2A nonimmigrant visa petitions includes a determination as to whether each petition is otherwise approvable and whether each accompanying request for an extension of stay merits a favorable exercise of discretion.

Question (2):

a.  Defendants object to any discovery.  Should the Court permit discovery, it should be limited to written discovery, and it should be limited solely to specific requests for individually identified documents or particular unknown but necessary facts. Additionally, Defendants reserve the right to seek relief under Fed. R. Civ. P. 26.

b.  Defendants object to any discovery and believe that any other facts Plaintiffs could request that are not put forth in the factual stipulation are publicly available.  Should the Court permit discovery, it should be limited to written discovery, and it should be limited solely to specific requests for individually identified documents or particular unknown but necessary facts.  Additionally, Defendants reserve the right to seek relief under Fed. R. Civ. P. 26.

### B.  Intervenor-Defendants' Position

Question (1):

Intervenor-Defendants concur in Defendants' position and note that Defendants would likely be the only subjects of discovery requests.  Intervenor-Defendants note as well, however, from their perspective as employers of H-2A and non-H-2A herders, that USCIS *never* approves an H-2A visa petition for longer than the 364-day period authorized in the 2008 USCIS rules, nor does the agency "automatically" approve visa petitions for employers certified previously on other petitions.

The data that the Defendant Department of Labor ("DOL") makes publicly available regarding H-2A temporary labor certification applications show a number of range herding job orders lasting less than the 364-day period allowed in the DOL and USCIS regulations, nor is every application for a temporary labor certification approved by DOL or visa petition approved by USCIS.  *See http://tinyurl.com/FY18H2ACerts.*  The DOL data also show that the Department of Labor certified 97% of *all* H-2A applications (both herding and crop agriculture) for FY2018 (*see http://tinyurl.com/FY18H2AData*).  This is the same success rate of Congressional incumbents seeking reelection.  (https://www.opensecrets.org/overview/reelect.php).  That does not support a finding that the underlying review (or election) process is illegal.

Question (2):

Plaintiffs should be permitted extremely limited written discovery, if any, to ask DOL and USCIS if either has a written policy or other formal pattern or practice requiring automatic approval of H-2A herder labor certification applications or visa petitions.  The agencies do not, and Plaintiffs cannot demonstrate that the agencies are violating "the plain text of [the defendants'] own regulations."

4

C.     **Plaintiffs' Position**

      1.     **Need for Discovery**

            a.     **Additional Facts Necessary to Establish the Department of Homeland Securities' Liability**

There are no additional facts necessary to establish Defendants' liability. The D.C. Circuit made clear that "***if*** the Project were to prove its claims of routine three-year or longer employment terms, [***then***] Homeland Security's ***policy and practice*** would contravene the plain text of its own regulations." *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 387 (D.C. Cir. 2018) ("*HAP*"). Plaintiffs have satisfied the "if" side of this syllogism: the Government's December 17, 2018 Factual Stipulation that it has "regularly approved" what are in essence three-year H-2A visas for herders and its representation immediately above, *see* page 2, *supra*, that the regular approvals for 364 day periods amount to a "pattern and practice" must mean that Plaintiffs have established routine three-year or longer employment terms. Axiomatically, Plaintiffs have therefore established that DHS engages in a "policy and practice" that contravenes the plain text of DHS regulations.

DHS appears to still resist this conclusion on two grounds that misinterpret the above passage from *HAP*. First, DHS suggests that even though it has admitted to regularly approving what amount to three year visas and to the existence of a pattern and practice of approving shepherds for 364-day periods of work, it somehow does not follow that DHS has a "policy or other directive" governing shepherd visa approvals. *See supra* at 2. This argument ignores that the above passage defines "policy" specifically to include the "routine three-year or longer employment terms" for herders. DHS's apparent narrower definition of what constitutes a "policy" contravenes *HAP*.

6735976.2

Second, DHS observes that its approval of herder visa petitions is "not 'automatic' because . . . each H-2A nonimmigrant petition is individually adjudicated, and petitioners must still establish that all other eligibility requirements for H-2A classification are satisfied." This observation is irrelevant: as the relevant passage from *HAP* instructs, all Plaintiffs must establish is that the three-year approvals are "routine." It is unclear how this standard is not met through DHS's representation above and the earlier representations in the Factual Stipulation.

Notwithstanding the above analysis, what drives Plaintiffs' insistence on discovery is that DHS has yet to confess error. Most importantly, in its representations to date, DHS appears ready to defend its actions on H-2A herders in part by arguing that something more is necessary to establish a "policy" that is subject to review under the APA.[1]

If DHS is correct that more is required to subject DHS's practice on the herder visa petitions to review or if the Court disagrees with Plaintiffs' analysis of the framework outlined in *HAP* for establishing DHS's APA violation, then as detailed below, Plaintiffs should be entitled to discovery that could further define the contours of DHS's policy, as alleged by Plaintiffs. *See* Part 2, *infra*. If the Court agrees with Plaintiffs' analysis above, they have no need for discovery at least as to liability for DHS (though, as discussed in Part 2 below, a separate question exists as to discovery on remedy).

> **b.     Whether A Policy and Practice Can Be Established Only If "All" Herders Are Approved for 364-Day Periods**

The Parties appear to agree that Plaintiffs need not show that the herder visa petitions are ***always*** approved because Defendants stipulate that they are ***regularly*** approved, and this regular approval amounts to a "pattern and practice" which is sufficient to trigger APA review under *HAP*.

---

[1] Notably, the Government has not filed an Answer in this case and is in default.

6

This conclusion is reinforced by the common meaning of "pattern or practice" in American law. In other contexts, the Supreme Court has explained that a "pattern or practice" does not require the establishment of a clear written policy. Rather, it is a "standard operating procedure[,] the *regular* rather than the unusual practice." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977) (emphasis added).[2] A similar principle holds true in the APA context, where it is well established that agencies cannot insulate from judicial review a regular practice of violating the law by coming into compliance with the law on occasion.[3]

In this case, the Government was unwilling to state that *all* shepherds stay for twice-renewed 364-day periods of work, though it appears that all Parties agree that the vast majority of shepherds work for three-year periods under the terms outlined in the December 17 Factual Stipulation. Plaintiffs understand that some herders likely did not have their visas approved for 364-day periods or have those visa ultimately extended for three years. There have now been many thousands of herders who have worked in the United States on H-2A visas, and invariably at least a handful of their employers may have sought visas of different durations. But these limited exceptions prove—rather than undermine—the rule, policy, or practice on how long herders work in the United States.

---

[2] *See also, e.g.*, *Aliotta v. Bair*, 614 F.3d 556, 562 (D.C. Cir. 2010) ("In the initial, or 'liability,' phase of a pattern or practice lawsuit, the analysis focuses on whether unlawful discrimination has been the employer's regular or "systemwide" pattern or practice.") (relying on *Int'l Bhd. of Teamsters*); *Townsend v. United States*, 282 F. Supp. 3d 118, 128 (D.D.C. 2017) (Howell, C.J.) (applying this framework).

[3] *See, e.g.*, *McLouth Steel Prod. Corp. v. Thomas*, 838 F.2d 1317, 1321 (D.C. Cir. 1988) (suggesting that evidence that EPA departed from general rule only four times out of a hundred cases was sufficient to establish a policy subject to review); *Bellarno Int'l Ltd. v. FDA*, 678 F. Supp. 410, 415 (E.D.N.Y. 1988) (noting that two instances of deviation out of 386 decisions does not undermine the existence of an agency rule); *see also Gonzalez v. I.N.S.*, 996 F.2d 804, 810 (6th Cir. 1993) (suggesting that the Immigration and Naturalization Service had a policy of never granting discretionary immigration relief in drug cases where the agency could only point to one instance where the relief was granted).

### c.    The Existence of "Individualized Discretion" and a Finding of a Pattern and Practice

The potential for officials to exercise their individual discretion in denying visa applications for herders to fill an employment need that is neither temporary nor seasonal does not preclude the finding of a pattern and practice in this case nor the award of a remedy against Defendants to address this regular, illegal practice. First, this is not a case in which Plaintiffs allege that agency officials exercise their broad discretion in varied ways that each may be illegal for a number of reasons depending on the circumstances. Rather, in this case, Plaintiffs argue that *every* H-2A visa approved for a 364-day term and extended for a three-year term is illegal for the same reason: because it inherently does not fill a temporary need. They have also alleged, and the Government has now stipulated, that these individual actions are in fact the regular practice of the Government. The identification of that regular practice amounts to the "identif[cation of a] transgression of th[e] statutory and regulatory language, not to an exercise of broad, unspecified discretion." *HAP*, 901 F.3d at 388. Further, even if agency officials do exercise individual discretion in approving visa petitions, the Government now has knowledge of this uniform and regular practice. Plaintiffs should therefore be able to obtain a remedy forcing the Agency Defendants to come into compliance with the law.

In the alternative, if the Court concludes that the potential for individual agency officials to exercise their discretion in the visa application process precludes the finding of a pattern and practice subject to challenge under the APA, the Court should permit Plaintiffs to probe Defendants' unsubstantiated assertion that this regular practice is not glued together by any central agency decisionmaking that manifests in training of agency officials reviewing visa applications, communications with those officials, or conscious acquiescence to the illegal practice.

### 2.     Scope of Discovery

#### a.     Whether the Scope Is Appropriate or Should Be More Limited

Plaintiffs require discovery for two separate reasons: (1) as potentially necessary to establish liability against DHS, and (2) to address questions of remedy against DOL and DHS. Plaintiffs take each item in turn.

#### (i)     Liability as to DHS

First, Plaintiffs assert that an agency's regular practice that is uniformly illegal is subject to challenge under the APA even without any other evidence of centralized agency decisionmaking regarding the practice. If the Court disagrees with this premise, Plaintiffs need discovery to probe how and why DHS regularly engages in a practice that violates the law.

Plaintiffs would seek discovery from both the line-level officials approving H-2A herder visa petitions and higher-level representatives at DHS responsible for managing the H-2A program. As an initial matter, Plaintiffs are confident that written discovery and depositions would allow them to establish the existence of a policy governing DHS adjudication of shepherd visa petitions. This is because what happens with herder petitions deviates markedly from how the question of "temporary" work is assessed for most H-2A workers, where the assessment frequently turns on a careful review of whether the relevant evidence—often employers' payroll records, which can indicate how the employer has filled the same or similar position over a longer period of time—establishes that the employer has genuine temporary "need" or is trying to improperly pigeonhole a permanent worker into an H-2A visa. *See, e.g.*, *In re: Altendorf Transport, Inc.*, BALCA No. 2011-TLC-00158, at 14-15 & n.5 (Feb. 15, 2011) (denying H-2A labor certifications after reviewing payroll records), *available at* http://tinyurl.com/zoxrfv2; *Blumenfeld v. Attorney General*, 762 F. Supp. 24, 26 (D. Conn. 1991) (similar for denial of a visa petition).

9

In contrast to what happens with other H-2A workers, there appears to be no careful review of labor certifications or petitions for H-2A herders, and yet it is hardly a close call whether herder labor will last more than 364 days or otherwise meet the H-2A Statute's "temporary" need requirement: as this Court is well aware, H-2A herders stay for three year periods and "return many times working for the same rancher for up to twenty years." *HAP*, 263 F. Supp. 3d 160, 180 (D.D.C. 2017). Even a basic review of employer records for most herders would reveal that the work herders are performing fulfills a permanent—rather than temporary— need that has lasted for many years if not many decades.

Plaintiffs have no good visibility into the inner workings of the approval process for H-2A petitions but presume that at least several line-level officials are reviewing shepherd petitions and approving what should be easy ***denials*** of petitions. It is implausible that these line-level officials are all coincidentally violating DHS regulations in a way that just so happens to create this "herder exception" to the H-2A Statute's temporary-work requirement. It seems more likely that these officials received some sort of directive—likely from a higher-level official at DHS— that the framework they would apply in a case like *In re: Altendorf Transport, Inc.* or *Blumenfeld* should ***not*** apply in the case of H-2A herders. If Plaintiffs need to more precisely define the policy to which DHS adheres, they should be entitled to discovery targeted at addressing the clear discrepancy between how H-2A herder visa petitions are treated and how other petitions are treated. Discovery would therefore touch upon, most importantly, the training of DHS officials and how that training has been applied in assessing petitions.

As detailed in the schedule below, *see* Part 2.b.iv, Plaintiffs can attempt to obtain some of this information first through written discovery. Plaintiffs will start with interrogatories and document requests served on DHS itself, asking it to detail the relevant officials who handle the

6735976.2

implementation of the H-2A program, explain the organization of the H-2A program within DHS, and identify the officials who are approving the herder H-2A visa petitions.[4] Depositions would be necessary to confirm what is stated in the written discovery. *Cf.* Plaintiffs' Reply in Support of Motion for Preliminary Injunction and Opposition to Defendants' Motion to Dismiss at 15, *Damus v. Nielsen*, No. 18-cv-578 (D.D.C filed May 3, 2018) [ECF #25] (noting that DHS officials' representations denying an unwritten policy was contradicted by other evidence in the record); *Venetian Casino Resort, L.L.C. v. EEOC*, 530 F.3d 925, 930 (D.C. Cir. 2008) (noting how the Court at oral argument asked numerous questions of counsel for the Government that probed the existence and contours of the policy at issue in that case).

Plaintiffs are willing to limit the discovery requests as the Court deems proper. Plaintiffs' initial request for the maximum numbers of requests and depositions permitted under the Federal Rules of Civil Procedure was driven by the uncertainty of precisely determining—within an agency as large as DHS—who the proper custodians and witnesses would be to establish the existence and contours of an unwritten policy that DHS (still) appears unwilling to admit exits. Moreover, while Plaintiffs wish to preserve the ability to depose the line-level DHS officials who approve the visa petitions, they do not necessarily anticipate needing to use the maximum amount of time allowed for a deposition under the Federal Rules of Civil Procedure.

Finally, Plaintiffs' need for discovery as to ***liability*** is only relevant to their challenge to DHS's policies. Unlike DHS, the challenge against DOL centers on the 2015 Rule that authorized the 364 day periods of need for shepherd labor certifications. *See* ECF # 93 at 24-29 (articulating the specific arguments related to the 2015 Rule). At the same time, the

---

[4] Plaintiffs do not know how many officials approve herder H-2A visa petitions. Plaintiffs' focus in discovery would be on the DHS supervisory personnel who direct the actions of the line-level personnel.

6735976.2

administrative record provided by DOL is only relevant to whether that agency can justify the parts of the 2015 Rule that authorized H-2A labor certifications. Notably, DHS has never provided any administrative record justifying its practice of certifying visa petitions for H-2A herders and until recently would not even concede that it engaged in a "practice" of regularly approving visa petitions in the manner outlined in the Factual Stipulation.

### (ii)    Remedy

As also noted in the December 17 joint report, Plaintiffs seek discovery on remedy. Plaintiffs' position is that the illegal aspects of the DOL and DHS policies or practices on approving H-2A shepherd labor certifications and visa petitions should be vacated and remanded to the agencies, and the agencies should be enjoined from issuing additional illegal H-2A visas to herders. *See, e.g.*, ECF 93 at 43-45. Importantly, Plaintiffs have no objection to DOL and DHS continuing to authorize visas for herders under the separate and herder-specific regulatory scheme for permanent work visas. *See, e.g.*, 20 C.F.R. § 656.16(a), (c) *see also* 8 U.S.C. § 1153 (statutory authority that allows for visas for permanent work).

In conferences and briefing, however, the Government has suggested that vacatur or an injunction against the issuance of additional visas would be unduly burdensome. The Government has also argued that under the D.C. Circuit's decision in *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993), remand without vacatur would be appropriate in this case as vacatur would have "disruptive consequences." ECF 101-1 at 52 (quoting *Allied-Signal*). Whether vacatur or an injunction is unduly burdensome and would lead to disruptive consequences are classic factual questions that would turn on, among other things, the number of available visas available under 20 C.F.R. § 656.16, and the Government's thus-far conclusory assertions of burden. Again, if the Government seeks to raise this defense, it should be subject to the same challenge and scrutiny as any fact-based defense to a remedy

12

available in litigation.

Discovery related to these issues would follow a process similar to discovery as to liability against DHS, with written discovery requests on the questions of administrative burden and any other remedies-related defense that the agency chooses to raise.

**b.     How Discovery Should Be Conducted**

**(i)     List of Issues Covered in Discovery**

As also outlined above, Plaintiffs' list of the specific issues they seek to inquire about in discovery beyond the factual stipulation includes:

- training of agency officials who grant H-2A visa petitions;

- communications between agency officials who grant H-2A visa petitions and their supervisors on the question of granting H-2A herder visa petitions;

- internal communications regarding the regular practice at issue in this case;

- communications with industry representatives regarding the regular practice at issue in this case;

- memoranda or similar materials regarding the regular practice at issue in this case and regarding the H-2A herder program;

- memoranda on what constitutes "temporary" work for purposes of the H-2A program and/or whether H-2A herders' work meets the definition of temporary

- memoranda on the 2015 DOL Rule governing herders as it relates to the definition of temporary or seasonal work

- data related to the number of visas issued under 20 C.F.R. § 656.16(a), (c);

- data related to the number of visas petitions approved under 8 U.S.C. § 1153;

- data related to the duration of time it takes for processing visas issued under 8 U.S.C. § 1153 as compared with those issued under the H-2A Statute.

- all factual support for any claim of administrative burden or other remedy-based defense.

### (ii) Administrative Record and the Identities of the Proper Deponents

The administrative record, thus far only provided by DOL as it relates to Plaintiffs' separate challenge against that agency's 2015 Rule for herders, does not on its own supply the identities of proper deponents. Plaintiffs believe that they can identify those individuals through interrogatories served on DHS.

### (iii) Persons Plaintiffs Intend to Depose

Plaintiffs intend to propound interrogatories on DHS for the purpose of identifying individuals with knowledge of the matters identified in (b)(i). These individuals are presently unknown but would be a combination of agency leaders that manage the H-2A program and line-level officials who approve herder H-2A visa petitions.

### (iv) Detailed Schedule to Complete Discovery Within the Proposed Period Up To June 28, 2019

| Event | Date |
|---|---|
| Plaintiffs Shall Serve Initial Written Discovery Requests on DHS as to Liability and DOL and DHS as to Remedy | March 1, 2019 |
| Defendants' Objections to Initial Written Discovery Requests Shall Be Served | March 22, 2019 |
| Document Production in Response to Initial Requests May Occur on a Rolling Basis | |
| Deadline for Agencies to Respond to First Written Discovery Requests | April 12, 2019 |
| Deadline for Plaintiffs to Serve Any Subsequent Written Discovery Requests | April 26, 2019 |
| Deadline for Defendants' to Object to Any Additional Written Discovery Requests | May 17, 2019 |

14

| Depositions May Commence | May 20, 2019 |
|---|---|
| Deadline for Agencies to Produce Responses to Subsequent Written Discovery Requests | May 31, 2019 |
| Discovery Cut-Off | June 28, 2019 |

Respectfully Submitted,

 _/s/Dermot Lynch_
Dermot Lynch (admitted pro bono under Rule 83.2(g))
William W. Taylor, III (# 84194)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
202-778-1800
wtaylor@zuckerman.com
dlynch@zuckerman.com

Alexander Hood (admitted pro bono under Rule 83.2(g))
Nina DiSalvo (admitted pro bono under Rule 83.2(g))
TOWARDS JUSTICE
1535 High St., Suite 300
Denver, CO 80218
720-239-2606
alex@towardsjustice.org
_Attorneys for Plaintiffs_

 _/s/ Jessica A. Dawgert_
Jessica A. Dawgert
Senior Litigation Counsel
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-9428
Jessica.A.Dawgert@usdoj.gov
_Attorney for Federal Defendants_

_/s/Christopher Schulte_
Christopher Schulte
CJ LAKE, LLC
525 Ninth Street, N.W. Suite 800
Washington, DC 20004
(202) 465-3000
cschulte@cj-lake.com

6735976.2

*Attorney for Intervenor-Defendants*

6735976.2

**CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2019, I served a true and correct copy of the

forgoing on all parties pursuant to F.R.C.P. 5.

*/s/ Dermot Lynch*
Dermot Lynch
Attorney for Plaintiffs