## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Civil Case No. 15-cv-01562-BAH

HISPANIC AFFAIRS PROJECT, ET AL.,
    Plaintiffs,

v.

EUGENE SCALIA,[1] ET AL.,
    Defendants.

## SETTLEMENT AGREEMENT

Plaintiffs and the Federal Defendants agree to the following settlement terms:

I.   Preamble/Recitals:

    A. In order to avoid the burden of further protracted litigation, and without any admissions of liability, the Settlement Agreement is entered into between (1) the Plaintiffs who this Court previously found to have standing for the remaining claims at issue in this case, specifically, Rodolfo Llacua and the Hispanic Affairs Project; and (2) the United States of America, acting through the United States Department of Justice and on behalf of Federal Defendants the Department of Labor ("DOL") and the Department of Homeland Security ("DHS") (collectively, "the Settling Parties"). The Intervenor Defendants do not object to this Agreement.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court should substitute the following individuals for their predecessors: Eugene Scalia as the Secretary of Labor; John Pallasch as the Assistant Secretary for Department of Labor's Employment and Training Administration; and Kevin McAleenan as the Acting Secretary for the Department of Homeland Security.

B. The Parties further agree to the entry of the Settlement Agreement as final and binding between themselves as to all remaining issues raised in the Second Amended Complaint filed in this action.

C. In *Hispanic Affairs Project v. Acosta*, the United States Court of Appeals for the District of Columbia Circuit partially vacated this Court's grant of summary judgment in favor of Defendants. 901 F.3d 378, 388, 391 (D.C. Cir. 2018). In addressing the Plaintiffs' claims against DHS, the D.C. Circuit recognized that Plaintiffs "t[ook] no exception to the content of the" existing DHS regulations. *Id.* at 387. The Parties acknowledge the D.C. Circuit held: "(i) the Project's complaint adequately raised a challenge to the Department of Homeland Security's practice of automatically extending 'temporary' H-2A petitions for multiple years; (ii) the Project adequately preserved its challenge to the Department of Labor's decision in the 2015 Rule to classify herding as 'temporary' employment; (iii) the 2015 Rule's minimum-wage rate for herders is not arbitrary, capricious, or unsupported by the record; and (iv) the Project lacks standing to challenge the wage rates set by the already-vacated 2011 Guidance Letter." *Id.* at 385.

   1. Defendant DHS further acknowledges that the D.C. Circuit concluded, based on the joint appendix before it, that "the Project has plausibly shown that [Defendant DHS]'s *de facto* policy of authorizing long-term visas is arbitrary, capricious, and contrary to law, in violation of the APA and the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, because it 'authorizes the creation of permanent herder jobs that are not temporary or seasonal.'" *Id.* at 386 (original alterations omitted).

2. Defendant DOL further acknowledges that the D.C. Circuit concluded, based on the joint appendix before it, that "[Defendant DOL] has long been and remains fully cognizant of the inconsistent treatment accorded to herders in contrast to all other H-2A workers" and that "[i]n light of the comments received [in response to its Notice of Proposed Rulemaking], the analysis undertaken by [DOL], the inherent necessity to address 'temporary' need as an elemental component of the rulemaking and [DOL]'s statutory authorization to act, and [DOL's] express justification of this aspect of its final rule, the Project's challenge to [DOL]'s decision that herding positions qualify as temporary employment 'was expressed by the agency and is properly before the court.'" *Id.* at 390-91 (original alterations omitted).

II. Terms and Conditions:

A. DOL agrees to engage in rulemaking and proposes to rescind 20 C.F.R. § 655.215(b)(2) ("The period of need identified on the *H–2A Application for Temporary Employment Certification* and job order for range sheep or goat herding or production occupations must be no more than 364 calendar days. The period of need identified on the *H–2A Application for Temporary Employment Certification* and job order for range herding or production of cattle, horses, or other domestic hooved livestock, except sheep and goats, must be for no more than 10 months.").

1. DOL will request that this proposed rule be placed on the Office of Management and Budget's ("OMB") Spring 2020 Unified Agenda of Regulatory and Deregulatory Actions ("regulatory agenda" or "agenda"), which will set forth an anticipated publication date for the Notice of Proposed Rulemaking. DOL will

provide status updates to Plaintiffs and the Court when available, unless and until DOL takes a final action under the APA, which could include issuing a final rule or withdrawing the rulemaking.

2. DOL will begin coordination in order to place the issue on the regulatory agenda within 14 days of an order of the Court approving the Settling Parties' Settlement Agreement.

B. United States Citizenship and Immigration Services ("USCIS"), a sub-agency of DHS, will publish a Policy Memorandum as to what constitutes a "temporary need" or a "seasonal need" for purposes of H-2A petitions filed on behalf of sheep and/or goat herders, in light of the D.C. Circuit's opinion.

1. USCIS will endeavor to publish the memorandum online for public comment by November 15, 2019, and will implement each stage of the process necessary to publish a finalized version of the memo as expeditiously as possible. The public, including the Plaintiffs and Intervenors, will be provided 30 days to comment after the USCIS Policy Memorandum is published. USCIS will endeavor to review all comments, and if needed, make edits and publish a revised memorandum by March 1, 2020. USCIS anticipates a June 1, 2020 effective date for the Policy Memorandum.

2. USCIS will address the following in the Policy Memorandum:
    a. Adjudication of all petitions must be consistent with other H-2A adjudications, and in compliance with existing statutory and DHS regulatory schemes;

b.  A visa for herding work also may be obtained by petitioning under 8 U.S.C. § 1153(b)(3) and meeting the statutory and regulatory requirements under that classification;

c.  A visa petitioner's need for the duties to be performed or the nature of the need for the position, which can only be established on a case-by-case basis, determines whether or not such need is "temporary";

d.  As noted by the D.C. Circuit, a "policy of authorizing long-term visas," resulting in the "creation of permanent herder jobs that are not temporary or seasonal" violates both the Administrative Procedure Act and the Immigration and Nationality Act.  It follows that, absent a meaningful or material break between repeat filings of such requests for sheep/goat herders for the same work, approval of such requests is impermissible;

e.  As strongly suggested by the D.C. Circuit, it does not constitute "temporary" work for a petitioner to claim a seriatim 364-day period of need or similarly lengthy consecutive period for the same type of sheep/goat herder position;

f.  To establish a "temporary" need for a position for which there had been prior approved sheep/goat herding employment that reflected longer-than-one-year-need, an employer must show a need to fill the position on a temporary basis;

g.  Many petitioners for H-2A herding visas have demonstrated years- or decades-long need for the labor, which likely reflects a need that is not "temporary" under 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and 8 C.F.R. § 214.2(h)(5)(iv)(A);

    h. There are limits on the type of "seasonal" work that can be performed on an H-2A visa. *See* 8 C.F.R. § 214.2(h)(5)(iv)(A) ("An H–2A petitioner must establish that the employment proposed in the certification is of a temporary or seasonal nature. Employment is of a seasonal nature where it is tied to a certain time of year by an event or pattern, such as a short annual growing cycle or a specific aspect of a longer cycle, and requires labor levels far above those necessary for ongoing operations. Employment is of a temporary nature where the employer's need to fill the position with a temporary worker will, except in extraordinary circumstances, last no longer than one year."); and

    i. Each petition filed with USCIS is to be adjudicated on its own merits, and an employer may seek more than one petition in light of multiple and distinct seasonal or temporary needs within a given calendar year. It is the petitioner's burden to establish such temporary or seasonal need(s), if any, within a given calendar year.

3. Once the Policy Memorandum is finalized, USCIS will provide training to its adjudicators to ensure that the H-2A guidance on sheep and/or goat herder petitions is properly conveyed.

C. Prior to the effective date of the Policy Memorandum, USCIS will provide a direct submission option for submitting an electronic "tip" regarding potential H-2A visa fraud. Additionally, within 30 days of the complaint being dismissed pursuant to Section II.E., Defendants will provide Plaintiffs with contact information for an agency contact in the Department of Labor Wage and Hour Division ("WHD"), in the event Plaintiffs wish to bring a general or programmatic enforcement concern to the

6

agency's attention. Plaintiffs must file any specific enforcement complaint in the first instance through the normal WHD channels. The point of contact will not accept a complaint in the first instance.

D. The Settling Parties agree that this case may be stayed as of the date the Court issues an order approving the Settlement Agreement.

   1. Either Plaintiffs or the Federal Defendants may move to reactivate the case prior to dismissal if either party believes the terms of this Agreement are not being fulfilled. A motion to reactivate the case is possible upon meeting the following conditions:

      a. The party seeking reactivation has provided the opposing party with ten days' notice of their intent to reactivate the case;

      b. The parties meet and confer in good faith within the ten days of receiving notice; and

      c. The party seeking reactivation certifies in good faith that the parties are unable to amicably resolve the issue(s) prompting the motion to reactivate the case. The motion to reactivate will request a status conference to determine the appropriate next steps in the case.

   2. A motion to reactivate can also occur under the following circumstances as long as the parties adhere to the process outlined in Section D.1.a-c:

      a. If the final USCIS Policy Memorandum has not been made effective by June 1, 2020;

      b. If the final USCIS Policy Memorandum does not adequately address the points in Paragraph II.B.2.a-i. above within the context of existing statutes and

regulations and if Plaintiffs raised their concerns or objections during the comment period for the Memorandum, Plaintiffs may, within 60 days of the publication of a revised Policy Memorandum, move to reactivate the case on the Court's active docket; or

c. If DOL has not made substantial progress on the process outlined in Section II.A. within eighteen (18) months after the date the Court approves this Settlement Agreement.

E. Plaintiffs will file a motion to dismiss, with prejudice, all remaining counts, including counts five through seven, in the Second Amended Complaint 90 days after one of the following two dates (whichever is later): (1) the effective date of any final rule rescinding 20 C.F.R. § 655.215(b)(2) proposed under II.A, or (2) the effective date of the USCIS Policy Memorandum referenced in II.B.  The motion to dismiss will state that all outstanding claims and issues, including fees and costs, are resolved.

F. Plaintiffs agree that it shall not constitute a violation of this Agreement if either agency is enjoined from enacting policies contemplated by this Agreement. Similarly, Plaintiffs acknowledge that Defendant DOL's commitment to engage in the rulemaking referenced in this Agreement includes an inherently interactive process, which implicates other government agencies and public considerations.  Further, Plaintiffs acknowledge that Defendant DOL is required at all times to comply with its statutory obligations pursuant to the APA, and therefore, it cannot commit to a rigid timeline.  The Settling Parties further acknowledge that Defendant DOL may not agree to or guarantee a specific outcome from its anticipated rulemaking. Accordingly, the Settling Parties agree that the remaining claims against DOL in

Counts five through seven of the Second Amended Complaint, *see* Answer, ECF No. 127 at 1, will not be dismissed with prejudice, as described in section II.E, unless or until DOL issues a final rule rescinding 20 C.F.R. § 655.215(b)(2).

G. The Settling Parties acknowledge that Plaintiffs can obtain information regarding the effect of this agreement by reviewing the data on DOL's website, including DOL's Labor Certification Registry and Public Jobs Registry.  Additionally, USCIS agrees to provide quarterly reports for twenty-four months (eight quarters) beginning three months after the effective date of its Policy Memorandum.  These reports will include aggregate data as to the number of H-2A petitions filed by Western Range Association and Mountain Plains Agricultural Service.  The reports will include:

1. Number of H-2A petitions filed by Western Range Association and Mountain Plains Agricultural Service, and the number of such petitions that are pending, approved or denied during the reporting period, and

2. The period of need requested for each petition filed by Western Range Association and Mountain Plains Agricultural Service.

| | |
|---|---|
| November 8, 2019 | Respectfully Submitted, |
| */s/ David Seligman* | */s/ Jessica A. Dawgert* |
| David Seligman | Joseph H. Hunt, Assistant Attorney General |
| Alexander Hood | William C. Peachey, Director |
| Nina DiSalvo | Glenn M. Girdharry, Assistant Director |
| (all admitted pro bono under Rule 83.2(g)) | Jessica A. Dawgert, Senior Litigation Counsel |
| TOWARDS JUSTICE | DEPARTMENT OF JUSTICE |
| 1410 High Street, Suite 300 | CIVIL DIVISION |
| Denver, CO  80218 | Office of Immigration Litigation |
| 303-921-7493 | P.O. Box 868, Ben Franklin Station |
| david@towardsjustice.org | Washington, DC 20044 |
| | (202) 616-9428 |
| | Jessica.A.Dawgert@usdoj.gov |
| *Attorneys for Plaintiffs* | *Attorneys for Federal Defendants* |